**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Apr 29 2014, 10:04 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**JILL DOGGETT**
Hart Bell, LLC
Vincennes, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) |
| P.C., J.W., and K.W., Minor Children, | ) ) |
| S.C., Mother, | ) ) |
| Appellants-Respondents, | ) ) |
| vs. | ) No. 42A01-1307-JT-319 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE KNOX SUPERIOR COURT
The Honorable W. Timothy Crowley, Judge
Cause Nos. 42D01-1212-JT-24, 42D01-1212-JT-25, 42D01-1212-JT-26

**April 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

S.C. (Mother)[1] appeals the termination of her parental rights to K.W., P.C., and J.W. (Children). She argues the Department of Child Services (DCS) did not present sufficient evidence to prove the conditions under which Children were removed would not be remedied and that termination was in the best interests of Children. We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother is the parent of K.W., born January 19, 2004; P.C., born July 7, 2006; and J.W., born October 6, 2010. On January 27, 2011, DCS removed Children from Mother's home after Mother tested positive for methamphetamine and law enforcement found drug paraphernalia in her home. On February 14, 2011, Mother admitted Children were Children in Need of Services (CHINS) and the trial court adjudicated Children as such. On March 14, 2011, the trial court held a dispositional hearing and ordered Mother to, among other things, maintain contact with DCS and service providers; maintain suitable, safe, and stable housing for Mother and Children; maintain a legal source of income; abstain from the use of illegal drugs; complete a substance abuse assessment and follow the recommendations thereof; submit to random drug screens; refrain from the commission of any acts of domestic violence; and participate in visitation with Children.

Mother did not comply with the trial court's order, and DCS filed petitions to terminate Mother's rights to Children. The trial court conducted evidentiary hearings and then, on June 17, 2013, issued orders terminating Mother's parental rights.

---

[1] The parental rights of the father of each child were also terminated. However, none of the fathers participate in this appeal.

2

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied, cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not

3

be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship:

(2) The petition must allege:
    (A) that one (1) of the following is true:
        (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
        (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
        (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
    (B) that one (1) of the following is true:
        (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
        (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
        (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
    (C) that termination is in the best interests of the child; and
    (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove these allegations by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, the court must terminate the parent-child relationship.

4

Ind. Code § 31-35-2-8.

Mother challenges the sufficiency of the evidence supporting the trial court's findings under subsections (B) and (C) of Section 31-35-2-4(b)(2).

### 1. Reasonable Probability Conditions will not be Remedied

Because our legislature wrote subsection (B) in the disjunctive, a trial court needs to find only one of the three requirements established by clear and convincing evidence before terminating parental rights. *In re L.S.*, 717 N.E.2d at 209. The trial court found the conditions that resulted in Children's removal would not be remedied.

In making such a determination, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id.* A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are

5

permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762

N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

The trial court found and concluded:[2]

> [Mother] has failed to remedy the reasons for removal and for continued placement of the child outside of the home. She has failed to substantially and continuously comply with this Court's orders as set forth below.
> a.    [Mother] has failed to keep many of her appointments with the Family Case Manager from the Department of Child Services and with service providers.
> b.    [Mother] has failed to consistently participate in visitation and has missed a number of scheduled visits with [Children]. The lack of progress in following this Court's orders resulting in [Mother] receiving only supervised visitation for the major portion of the pendency of the CHINS and termination proceedings.
> c.    [Mother] lost her housing and was unable to obtain and maintain adequate housing for herself and [Children] during the pendency of these proceedings.
> d.    [Mother] failed to properly address her substance abuse issues. She did attend a substance abuse evaluation, but failed to follow through with treatment. Her case was subsequently closed by the service provider, the Samaritan Center in Vincennes, Indiana, due to [Mother's] failure to attend the scheduled therapy sessions.
> e.    [Mother] failed to remain drug free, and continued to test positive for controlled substances during the pendency of the CHINS and termination proceedings. In addition, [Mother] failed to submit to a number of drug screens that were requested by the Department of Child Services. Most of [Mother's] drug screens were positive for marijuana. Fourteen of [Mother's] positive drug screens were positive for methamphetamine. [Mother] has not submitted a clean drug screen since August 17, 2012.
> f.    [Mother] was arrested and incarcerated on several occasions during the pendency of the CHINS proceedings. Charges of

---

[2] The trial court issued a separate termination order for each child. The orders are identical, except for the child's identifying information and the information regarding that child's father. We cite from the trial court's order regarding P.C.

6

possession of methamphetamine, maintaining a common nuisance and possession of paraphernalia were filed against [Mother] during the pendency of the CHINS proceedings. Those charges remain pending in Knox Superior Court 1. [Mother] was also arrested, charged and convicted of criminal conversion in the Knox Superior Court II during the pendency of the CHINS proceedings.

(App. at 14-15.)

Mother argues the State did not present sufficient evidence the conditions under which Children were removed from her care would not be remedied. She contends she "complied with the Orders of the Court[,]" "did obtain and maintain housing for periods of time[,]" "obtained legal means to support herself and [Children] during the CHINS case[,]" and completed visitation with Children. (Br. of Appellant at 9-11.) Mother also claims she:

followed Court orders regarding illegal substances by remaining drug free for significant periods of time during the life of the case. Though her compliance was not always perfect, [Mother] had periods during the case where she submitted regular, random screens, which were negative for all substances. [Mother] submitted regular, clean screens from approximately February 18, 2011 through November 29, 2011, a period of over nine months. [Mother] was very close to having [Children] returned to her care during this period of time. [Mother] also submitted regular, clean screens from March 30, 2012 through July 3, 2012, another extended period of over three months. At the time of the termination hearings, [Mother] was attempting to seek additional addiction counseling with the help of her service providers.

(*Id*. at 11) (citations to the record omitted).

However, DCS presented evidence Mother did not attend individual and substance abuse counseling as ordered; was arrested multiple times during the proceedings; was evicted from the apartment she shared with Children due to her drug use, after which she lived with family and friends until she moved in with her current husband's father; had an unstable

7

employment history; and was required to participate in supervised visits with Children due to non-compliance with the trial court's orders. Regarding Mother's substance abuse, DCS presented evidence she missed over forty-five drug screens, tested positive for marijuana and/or methamphetamine twenty times since September 14, 2012, including two positive drug screens during the time the trial court held the evidentiary hearings. Mother's arguments are an invitation for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge credibility of witnesses). DCS presented sufficient evidence that the conditions under which Children were removed from Mother's care would not be remedied.

2. <u>Best Interests of Child</u>

In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the juvenile court must subordinate the interests of the parent to those of the child. *Id*. Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Regarding the best interests of Children, the trial court found and concluded:

4.      That it has been established by clear and convincing evidence that the allegations of the termination petition are true in that termination of the parent-

8

child relationship is in the best interest of the child.

> . . . [Mother's] continuing drug issues and the chronic instability of her home have made a stable and nurturing relationship with [Children] impossible. While it is clear that [Mother] loves her [Children], she has been unable, or unwilling, since the removal of [Children] to do the things necessary to bring about reunification with [Children]. Both the father and [Mother] have demonstrated an inability to regulate and consistently meet the needs of [Children].

(App. at 15.) Mother argues she has made progress in services, and is on the path to being drug free. Based on the evidence cited in the above section, and Children's need for permanency, we cannot agree. DCS presented sufficient evidence termination was in the best interests of Children. *See McBride*, 798 N.E.2d at 192-93 (child's need for permanency cannot be delayed by possibility parent will eventually be able to care for child).

## CONCLUSION

DCS presented sufficient evidence that the conditions under which Children were removed from Mother's care would not be remedied and that termination was in the best interests of Children. Accordingly, we affirm.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.

9